May it please the Court, Andrew Adler from the Federal Defender's Office on behalf of Tyree Roberts. In this day-long felon in possession trial, the District Court admitted twelve of Mr. Roberts' prior firearm convictions. Four felon in possession convictions, seven armed robberies, and one aggravated assault with a firearm. The point we want to emphasize here is this. Once the District Court admitted the four nonviolent felon in possession convictions, Rule 403 barred the District Court from going further and admitting eight violent firearm convictions. Those convictions were unfairly prejudicial because they portrayed Mr. Roberts as a serial, violent, and dangerous man, and the case was otherwise nonviolent. He was charged merely with possession. Furthermore, those convictions were entirely cumulative and served only a propensity purpose because the nonviolent felon in possession convictions gave the government everything it could have possibly sought and more with regard to Mr. Roberts' knowledge. So the unfair prejudice and the cumulative value of those violent convictions substantially outweighed any minimal probative value those convictions might have had. So we believe that a straightforward application of Rule 403 is the easiest way to control this, to resolve this case. What's your best authority for the proposition you're advancing? Well, the two cases we've relied on heavily are Old Chief and this Court's decision in Green. They both support general propositions under Rule 403 that we think are helpful, and Old Chief establishes two. One, that when you're faced with two equally probative forms of evidence, you've got to go with the non-prejudicial version, and it means that the defendant's prior convictions is prejudicial. Green establishes that even a reference to multiple prior convictions, without even reference to the name or nature of them, is prejudicial. Here we have the combination of both of those things happening. We have eight violent prior convictions in an otherwise nonviolent case. And so we just think that there's no justification. Once you have the four nonviolent felon in possessions that come in, there's no legal justification for admitting eight. What if it had been four violent? If the first four were violent, then it's a slightly different case. You may have been able to get in one, maybe two. That might be up to the discretion of the District Court. But when you have nonviolent options available to you in a nonviolent case, you've got to go with those first. And once the District Court decided to get four in, and I'd also point out that once she decided to do that, the District Judge offered no . . . What establishes that, that you have to go with the less serious? We think that Old Chief supports that, and simply common sense application of Rule 403. And the government and the District Court have not offered any explanation for why, what probative value these eight additional convictions served in this case. This is an extreme 404B case. We have never seen a case this bad. The government cites no authority from this court, or any court for that matter, to uphold the admission of this many violent convictions in an otherwise nonviolent case. We see no reason why the court should break that new ground here. And the District Judge on pages 81 to 82 of the trial transcript, this is how it happened. She admitted that four nonviolent felon in possession convictions. She said, well, it's the fact that he was convicted of possessing a firearm that's relevant, so I'm going to allow it. The Defense Counsel said, well, what about all of the armed robberies, Your Honor? The District Court said, well, government, you wanted those in two. Government says yes. She says, court says, okay, well, I'll admit it. There's no explanation. There's no Rule 403 analysis in this case. There's no recognition of the highly prejudicial nature of these convictions. There's no recognition of the cumulative effect of these convictions. At the very least, we have a procedural problem here, too, because the judge is not even doing the 403 analysis. That is the narrow way to resolve this case, but we just don't . . . The only dispute, really, was whether this was a knowing possession. Correct. You would agree, wouldn't you, that one prior conviction be relevant material to prove knowledge, right? Wouldn't you agree, too, that the more convictions you have, the more likely it is that you did not mistakenly possess it? That's only through propensity reasoning, though, Your Honor. That reasoning is, well, he's done it this many times. He's got a bad character. He has a tendency to do it. He's done it 12 times in the past. He's more likely to do it a 13th time. That is propensity reasoning. While we've admitted under this court's precedent that one would have been okay, we don't even think that the four felon and possessions was all right, but we don't think the court needs to decide that here. We think all the court needs to say is once the court admitted the four nonviolent ones, that was it. Then 403 comes into play and limited the discretion of the district court to go further and introduce eight violent convictions in an otherwise nonviolent case. The jury is only human here. When they're confronted with 12 priors, eight violent, they're naturally, unavoidably going to be thinking that Mr. Roberts is a dangerous person. He needs to be locked up. He's done it 12 times in the past. He's done it 13th time. That's propensity reasoning. That's unfairly prejudicial. District court gave the limiting instruction. Of course, Your Honor. It did. It was a boilerplate limiting instruction. We acknowledge that's a relevant factor, but it cannot trump an otherwise egregious rule 403 violation. Otherwise, the rules of evidence would lose any independent force. Again, the court is required to evaluate the probable effectiveness of a limiting instruction. In an egregious case like this where you have 12 priors, eight violent, the jury is only human. They're going to be looking at those priors. They're going to be seeing him as violent. No limiting instruction is going to cure that. It's not going to affect the overall 403 imbalance that we see in this case. The only other argument that the government really advances here is that our case was an egregious case. We acknowledge... Let's go back to the limiting instruction for a minute. Is there any authority saying that it makes a difference that convictions were admitted at the beginning of the trial and then the limiting instruction was much later? I'm not aware of any instruction, but I do want to emphasize the fact that the government began with these prior convictions. It introduced them in its very first witness. Did the defense ask for a limiting instruction earlier? No. The district court gave one on its own, I believe. Again, that can only go so far. We cite authorities on pages 10 to 11 of our reply brief that make this clear that this limiting instruction is not a panacea. This is the case that shows why we have Rule 403. This is the exceptional case. Limiting instructions cannot whitewash these egregious Rule 403 violations. Otherwise, again, there would be no point. Back to Judge Pryor's question about beginning the trial with these prior convictions, the government's arguing that, well, we needed these. This was a close case. Well, we agree it was a close case, but this argument about prosecutorial need, also a relevant factor, but totally satisfied by the four nonviolent felon in possession. So if there hadn't been, let's just assume, there'd been no nonviolent convictions in the past, let's just assume there'd been violent convictions, then you would agree that, let's say one, so we get rid of the how many, one could be admitted to show where intent to possess is an element. Would you agree with that? We agree that under this court's precedent, that would be permissible. Of course, we not only have more than one, we have, you know. I'm just trying to make sure I understand. Sure. I mean, we acknowledge that under this court's decision in Jernigan, I mean, we don't agree with that decision, but we acknowledge that it exists, and we acknowledge that, so under that decision, at least one. Now, it would be worse if the one was violent. There would be more prejudice in that situation, so the four or three balance would be affected by that, but most likely, I think it would be within the district court's discretion to allow that, but here, we have, of course, a totally different case. If the court has nothing further, I'll reserve the remainder of my time. Okay, Mr. Adler, you've got five minutes for rebuttal, and Mr. Maddrell. Thank you, and may it please the court. Frank Maddrell on behalf of the United States, also president at Council Table, was trial assistant United States attorney, Mackenzie Duane. I'd like to start by speaking about the non-propensity relevance of multiple prior acts. In this case, the prior act, there are really six prior acts, six things that occurred, is the one alone is relevant because that tells us that this is a defendant who knows how to possess a firearm. He knows what a firearm is. He presumably knows how to handle a firearm, what ammunition is. Multiple possessions tell us a little something more about this defendant. Firearms are not simple objects. Firearms are something that people train to carry. There's proficiency of firearms. With multiple possession of a firearm, we can say that this defendant is a little more proficient in the carrying of firearms. In multiple possessions of firearms over a short period of time, we can say, we can infer that this defendant knows how to store a firearm, knows how to conceal a firearm. None of that is an issue in this case. It's only possession. It is only possession, but the missing puzzle piece, right? There is a defendant who's found in a home. In this home, there is a concealed firearm in the kitchen. Also in this home are 400 rounds of ammunition. A defendant who merely has a basic knowledge of what a firearm is and how to hold one fits the bill. A defendant who has more experience, more knowledge with firearms, using a firearm, concealing a firearm, that defendant fits the bill a little more. And I think that's special. That sounds to me an awful lot like you're saying, because the defendant has this proficiency, he's more likely to possess a firearm on this occasion, which is pure propensity. I am not saying that. And the reason I'm not saying that is what I am saying is because of what this defendant did 10 years ago, we can say something about what that defendant knows. It's a difference between saying, Joe Blow knows how to ride a bike because he once rode a bike, versus Lance Armstrong knows everything there is to know about bikes because he was in the Tour de France. Now obviously this isn't that extreme, but what we're saying is we're making a statement about what the defendant knows. And I think the multiple instances of his conduct tell us a little bit more about what he knows. I think it's also more relevant because there has been a span of time. The more significant the experience, the more significant the knowledge. The more likely it is that 10 years later that knowledge is with him. So I think that is the non-propensity basis. There is, of course, a parallel propensity risk. But the case law makes clear that every time we have admissible 404B, we can almost always articulate the inappropriate propensity reasoning. That is not dispositive. The most important question is, is there an alternative non-propensity reasoning? And I think that there certainly is an alternative non-propensity reasoning here. It's the heightened knowledge that we can infer from the heightened experience. And the knowledge that we can infer from the ways that those prior acts interrelated. What do you say about the argument of your adversary about violent versus non-violent convictions? I think there are two issues here. As to the prior acts, those were just the acts. He brandished the firearm and it was an armed robbery. Now, of course, the United States didn't get into the facts. So in many ways, that prejudice is minimized. And the courts have recognized instances where the United States did not get into the underlying facts as a positive factor. The mere presence of the armed robbery conviction on the judgments, I think that's the issue. There are six prior acts, but with those six acts, there are 12 different convictions listed. So the question is armed robbery. The question that we need to answer, we need to consider the incremental probative value of each additional act that's introduced. So once you've got the first four possessions, you've shown the jury that you've made the case. There's evidence in the record that maybe the possession wasn't accidental or unintentional. So what additional incremental probative value do those other acts have that's not outweighed by prejudice? Well, to be clear, the acts themselves, there was no act that was merely a felon possession act. All six acts were the robberies. He was charged simultaneously for multiple of these acts with felon possessions. So there was no mere possession act as opposed to a robbery act. Well, but there were mere possession convictions, as I understand it. That's correct. Well, I do think that in this case, going back to a defendant with some proficiency fits the bill. I do think brandishing and use of a firearm has some probative value. That tells us that this is someone who knows how to load a firearm, who knows how to safely handle a firearm, who knows how to conceal a firearm, who knows what ammunition is, who knows how to unload a firearm. The fact that these were a series of robberies related tells us that he's someone who knows how to maintain possession of a firearm. There is a relevant difference between someone who happens to be holding a firearm one time and someone who possesses a firearm in their home and maintains custody of a firearm. I mean, there are firearm experts. There are people who get trained in maintaining firearms. There's courses about how to maintain custody of a firearm. With sufficient knowledge, there is probative value here that's non-propensity. I think in this case, there was a special need for that. This is a defendant who was allegedly found with 400 rounds of ammunition under his bed and a firearm in the kitchen. This is somebody who, if he is guilty, had some intense knowledge of firearms. 400 rounds of ammunition for varying firearms is a lot. I think also something that wasn't mentioned in keeping on the topic of special relevancy in this case, knowledge wasn't simply at issue because they pled not guilty. Knowledge was at issue because they opened on the issue of knowledge. There was no material fact at issue other than knowledge. There was very little material fact. The defense did a really great job of impeaching that witness and calling into question where that letter had been found. Also, and I think this is critical, the defense theory was an alternative perpetrator. They had an alternative perpetrator and they bolstered that theory by putting in five prior convictions that that alternative perpetrator had been armed with firearms. Two judgments and five prior convictions. Two things are important about that. One is in the Beecham case, the court made clear that order of proof is not really the issue. We don't look at order of proof. Once the defense puts on a case, we look at the evidentiary ruling looking at the trial in total. There was a viable, strong alternative perpetrator theory and the evidence used was five prior convictions, including I believe aggravated assault. So similar convictions. Mr. Roberts argued that the government planted this evidence. He argued that not that the government planted the evidence, not the critical evidence, but that the note found, allegedly found in the bag of ammunition, there was one government witness testified that there was a letter to Mr. Roberts from the Department of Children and Families in the bag of ammunition. That was probably the strongest non-404B piece of evidence. But they argued that that letter wasn't really found there. They said the letter hadn't been crumpled. It would have been crumpled if it would have been in the bag. They noted that another government witness never testified to the letter. Otherwise he was pointing the finger at his brother. Otherwise he was pointing his finger at the brother. And in the Pritchard case, which is a 609B case, there is an interesting line of reasoning. And the court said when the defense was able to attack the government's witnesses using strong 609B, that was relevant to the fact that the government should be allowed to use 609B after the defense witnesses. A little bit of what's sauce for the goose type reasoning, but I think it's sound reasoning. I think some of that reasoning applies here, where they have this alternative perpetrator defense, and they're strongly bolstering that defense with five violent firearm convictions. So I think that's particularly relevant. I recognize that need for the evidence is an element of the 404B analysis, but it can't be the case, can it, that the weaker the government's case is, the easier it is to admit 404B evidence. Because then it seems to me that you're more likely that the prior convictions are going to be used by the jury in a propensity light. No, I think that's correct, Your Honor. I don't think as a general proposition the weaker the case, the more the government can use the evidence. It's a much more nuanced and particular analysis than that. And I think what's going on here is that we have evidence that has particular relevance that fits a particular need for that evidence in this case. We have only knowledge at issue, no other material fact. We have knowledge at issue in a case where the perpetrator who fits the bill clearly has some proficiency in firearms. I thought that we had said in Sterling that the incremental probity increases where the government does not have a strong case. It clearly does, Your Honor. I think when the government doesn't have a strong case as to knowledge in particular, getting to Judge Pryor's point, I don't think it's generally when the government's case is weak, we can just start throwing in 404B. So you're both right, but I think in Sterling, I think they're aiming particularly at knowledge, which is the point I'm trying to make. I think as to prejudice, there's a few points I'd like to make. There was the proper instruction. There was, as the court notes in green, tepid use, I think is the word, by the prosecutor. It is true that the prosecutor opened with it, but all he did was have the witness read the exhibits. There were no underlying facts put in, which the court spoke about in green. The prosecutor in his closing implored them to only use it for the appropriate reason and read essentially the instruction to the jury about the appropriate use. Also much of his felony status, the fact that he was on probation, the fact that he had been in prison for 10 years, Mr. Roberts, was already in the record. So a lot of this risk of them, a lot of the risk of the jury calling him a man of bad character was sort of baked in. I mean, it was already there, and I do think that's relevant at the incremental analysis of this 404B evidence. Finally, unless your honors have any more questions, I will cede the balance of my time. Thank you. Mr. Adler? Thank you. The violence was not baked in. This was an otherwise nonviolent case. The eight violent priors created a totally different portrayal of Mr. Roberts than the jury would have otherwise known. As to the prosecutorial need, two factual points. One, the government didn't even bother to forensically test any of the items found in the bedroom. That would have been a good way to prove knowledge, including the bullets, including the bags in which they were found. Second, the prosecution did not know this was going to be a closed case at the time they admitted the priors. The openings portrayed this as an open and shut case because Mr. Roberts lived in the bedroom, therefore it must have been his. They did not know about the brother defense until at the very earliest the prosecution started cross-examining the government's witnesses, asking if they had investigated whether somebody else had lived in the bedroom. Incidentally, they had not. So this was a little bit of a sloppy prosecution, and the government did not think this was going to be a weak case or a closed case at the time it admitted the priors at the very beginning of the trial. We can't base our decision on that, though, can we? I think it undercuts the government's need argument. I mean, it seems to me the problem with that argument is that what if the government learned of it and then introduces it? That makes it okay? That would be a stronger case for this need argument because then at the time they admitted the priors, they would have known it was . . . We would say where the evidence is exactly the same, that the result is different based on when the government learned of the defense? It might not be dispositive, but I think it's a relevant factor. In any event, here the government has already admitted the four priors of the nonviolent priors, and I think in the government's response here there's really no . . . This argument made for the first time here, an oral argument not made in their briefs, not made to the jury, that this proficiency argument is somehow not propensity, I don't understand it. Once you have four felon possessions, that means he possessed a firearm in the past. Under that reasoning, there would be no limit to the amount of prior firearm convictions the government could put in because under that reasoning, well, it made him more and more proficient. Also this case, the issue in this case was not whether he was proficient, the issue was whether he knew that the ammo was under his bed and the gun was in the house. We don't see how eight, 12 prior convictions adds to that in a way other than propensity. If that is not propensity, then I think propensity has become meaningless. Another point the government has made is that the brother had five prior convictions. In fact, the defense only highlighted the two prior firearm convictions that he had. In addition, the government talks about there being only six acts. The prosecution walked the jury through each of the convictions in the judgments, all 12 of them, and then on redirect, this is on page 135 to 136, they clarified with the witness that these acts, these convictions all took place on separate acts at different times. That wasn't even correct by the way, some of them took place on the same day, but as far as the jury knew, these were 12 separate acts, these convictions were 12 separate incidences. This business is about it being six acts, I think that's a non-starter, at least from the perspective of the jury. Unless the court has further questions. Thank you Mr. Adler.